**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 21-mj-00358 |
| | : | |
| OLIVER SARKO | : | |
| | : | |
| Defendant. | : | |

### UNITED STATES' UNOPPOSED MOTION TO CONTINUE AND TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT

The United States of America hereby moves this Court for a sixty (60) continuance of the above-captioned proceeding, and further to exclude the time within which an indictment/information must be filed under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, on the basis that the ends of justice served by taking such actions outweigh the best interest of the public and the defendant in a speedy trial pursuant to the factors described in 18 U.S.C. §§ 3161(h)(7)(A), (B)(i), (ii), and (iv).   In support of its motion, the government states as follows:

### FACTUAL BACKGROUND

Defendant is charged via a Complaint with offenses related to crimes that occurred at the United States Capitol on January 6, 2021.   In brief, on that date, as a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election, members of a large crowd that had gathered outside forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. Scores of individuals entered the U.S. Capitol without authority to be there.   As a result, the Joint Session and the entire official proceeding of the Congress was halted until the Capitol Police, the Metropolitan Police Department, and other law enforcement agencies from the city and

surrounding region were able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.   This event in its entirety is hereinafter referred to as the "Capitol Attack."

The investigation and prosecution of the Capitol Attack will likely be one of the largest in American history, both in terms of the number of defendants prosecuted and the nature and volume of the evidence.   Over 300 individuals have been charged in connection with the Capitol Attack. The investigation continues and the government expects that at least one hundred additional individuals will be charged.   While most of the cases have been brought against individual defendants, the government is also investigating conspiratorial activity that occurred prior to and on January 6, 2021.   The spectrum of crimes charged and under investigation in connection with the Capitol Attack includes (but is not limited to) trespass, engaging in disruptive or violent conduct in the Capitol or on Capitol grounds, destruction of government property, theft of government property, assaults on federal and local police officers, firearms offenses, civil disorder, obstruction of an official proceeding, possession and use of destructive devices, and conspiracy.

Defendants charged and under investigation come from throughout the United States, and a combined total of over 900 search warrants have been executed in almost all fifty states and the District of Columbia.   Multiple law enforcement agencies were involved in the response to the Capitol Attack, which included officers and agents from U.S. Capitol Police, the District of Columbia Metropolitan Police Department, the Federal Bureau of Investigation, the Department of Homeland Security, the Bureau of Alcohol, Tobacco, Firearms and Explosives, the United States Secret Service, the United States Park Police, the Virginia State Police, the Arlington County Police Department, the Prince William County Police Department, the Maryland State

Police, the Montgomery County Police Department, the Prince George's County Police Department, and the New Jersey State Police.   Documents and evidence accumulated in the Capitol Attack investigation thus far include: (a) more than 15,000 hours of surveillance and body-worn camera footage from multiple law enforcement agencies; (b) approximately 1,600 electronic devices; (c) the results of hundreds of searches of electronic communication providers; (d) over 210,000 tips, of which a substantial portion include video, photo and social media; and (e) over 80,000 reports and 93,000 attachments related to law enforcement interviews of suspects and witnesses and other investigative steps.   As the Capitol Attack investigation is still on-going, the number of defendants charged and the volume of potentially discoverable materials will only continue to grow.    In short, even in cases involving a single defendant, the volume of discoverable materials is likely to be significant.

The United States is aware of and takes seriously its obligations pursuant to Federal Rule of Criminal Procedure 16 and Local Criminal Rule 5.1(a), the provisions of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), *Giglio v. United States*, 405 U.S. 150, 153-54 (1972), and the Jencks Act, 18 U.S.C. § 3500.   Accordingly, the government, in consultation with the Federal Public Defender, is developing a comprehensive plan for handling, tracking, processing, reviewing and producing discovery across the Capitol Attack cases.   Under the plan, the discovery most directly and immediately related to pending charges in cases involving detained defendants will be provided within the next thirty to sixty days.   Cases that do not involve detained defendants will follow thereafter.   Such productions will also be supplemented on an on-going basis.   In the longer term, the plan will include a system for storing, organizing, searching, producing and/or making available voluminous materials such as those described above in a manner that is workable

3

for both the government and hundreds of defendants.   This latter portion of the plan will require more time to develop and implement, including further consultation with the Federal Public Defender.

The defendant is charged with violating 18 U.S.C. § 1752(a)(1) and (2), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do so; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; violating 40 U.S.C. § 5104(e)(2)(C)(D) & (G) which makes it a crime to enter or remain in a room designated for the use of either House of Congress or a Member with intent to disrupt the orderly conduct of official business, utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress.

## ARGUMENT

Pursuant to the Speedy Trial Act, an indictment charging an individual with the commission of an offense generally must be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. 18 U.S.C. § 3161(a).   Further, as a general matter, in any case in which a plea of not guilty is entered, a defendant charged in an information or indictment with the commission of an offense must

4

commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.   18 U.S.C. § 3161(c)(1).

Section 3161(h) of the Speedy Trial Act sets forth certain periods of delay which the Court must exclude from the computation of time within which an indictment must be filed.   As is relevant to this motion for a continuance, pursuant to subsection (h)(7)(A), the Court must exclude:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A).   This provision further requires the Court to set forth its reasons for finding that that any ends-of-justice continuance is warranted.   *Id.*   Subsection (h)(7)(B) sets forth a non-exhaustive list factors that the Court must consider in determining whether to grant an ends-of-justice continuance, including:

> (i)     Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

> (ii)    Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
> . . .

> (iv)    Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. §§ 3161(h)(7)(B)(i)(ii) and (iv).   Importantly, "[i]n setting forth the statutory factors that justify a continuance under subsection (h)(7), Congress twice recognized the importance of adequate pretrial preparation time." *Bloate v. United States*, 559 U.S. 196, 197 (2010) (*citing* §3161(h)(7)(B)(ii), (B)(iv)).

An interests of justice finding is within the discretion of the Court.   *See, e.g., United States v. Rojas-Contreras*, 474 U.S. 231, 236 (1985); *United States v. Hernandez*, 862 F.2d 17, 24 n.3 (2d Cir. 1988). "The substantive balancing underlying the decision to grant such a continuance is entrusted to the district court's sound discretion." *United States v. Rice*, 746 F.3d 1074 (D.C. Cir. 2014).

In this case, an ends-of-justice continuance is warranted under 18 U.S.C. § 3161(h)(7)(A) based on the factors described in 18 U.S.C. § 3161(h)(7)(B)(i)(ii) and (iv).   As described above, the Capitol Attack is likely the most complex investigation ever prosecuted by the Department of Justice.   Developing a system for storing and searching, producing and/or making available voluminous materials accumulated across hundreds of investigations, and ensuring that such system will be workable for both the government and defense, will take time.   Even after a system generally agreeable to the government and the Federal Public Defender is designed and implemented, likely through the use of outside vendors, it will take time to load, process, search and review discovery materials.   Further adding to production and review times, certain sensitive materials may require redaction or restrictions on dissemination, and other materials may need to be filtered for potentially privileged information before they can be reviewed by the prosecution.

The need for reasonable time to organize, produce, and review voluminous discovery is among multiple pretrial preparation grounds that Courts of Appeals have routinely held sufficient

to grant continuances and exclude the time under the Speedy Trial Act.   *See, e.g., United States v. Bikundi*, 926 F.3d 761, 777-78 (D.C. Cir. 2019)(Upholding ends-of-justice continuances totaling 18 months in two co-defendant health care fraud and money laundering conspiracy case, in part because the District Court found a need to "permit defense counsel and the government time to both produce discovery and review discovery"); *United States v. Bell*, 925 F.3d 362, 374 (7th Cir. 2019)(Upholding two-month ends-of-justice continuance in firearm possession case, over defendant's objection, where five days before trial a superseding indictment with four new counts was returned, "1,000 pages of new discovery materials and eight hours of recordings" were provided, and the government stated that "it needed more than five days to prepare to try [the defendant] on the new counts"); *United States v. Vernon*, 593 F. App'x 883, 886 (11th Cir. 2014) (District court did not abuse its broad discretion in case involving conspiracy to commit wire and mail fraud by granting two ends-of-justice continuances due to voluminous discovery); *United States v. Gordon*, 710 F.3d 1124, 1157-58 (10th Cir. 2013)(Upholding ends-of-justice continuance of ten months and twenty-four days in case involving violation of federal securities laws, where discovery included "documents detailing the hundreds financial transactions that formed the basis for the charges" and "hundreds and thousands of documents that needs to be catalogued and separated, so that the parties could identify the relevant ones")(internal quotation marks omitted); *United States v. Lewis*, 611 F.3d 1172, 1177-78 (9th Cir. 2010)(Upholding ninety-day ends-of-justice continuance in case involving international conspiracy to smuggle protected wildlife into the United States, where defendant's case was joined with several co-defendants, and there were on-going investigations, voluminous discovery, a large number of counts, and potential witnesses from other countries); *United States v. O'Connor*, 656 F.3d 630, 640 (7th Cir. 2011)(Upholding

ends-of-justice continuances totaling five months and twenty days in wire fraud case that began with eight charged defendants and ended with a single defendant exercising the right to trial, based on "the complexity of the case, the magnitude of the discovery, and the attorneys' schedules").

In sum, due to the number of individuals currently charged across the Capitol Attack investigation and the nature of those charges, the on-going investigation of many other individuals, the volume and nature of potentially discoverable materials, and the reasonable time necessary for effective preparation by all parties taking into account the exercise of due diligence, the failure to grant such a continuance in this proceeding would be likely to make a continuation of this proceeding impossible, or result in a miscarriage of justice.   Accordingly, the ends of justice served by granting a request for a continuance outweigh the best interest of the public and the defendant in a speedy trial.

Government counsel notified the defense of the filing of this motion, and counsel consents to the motion. Should this Court grant the continuance in this matter, counsel for the defendant requests that this matter be set in early September due to scheduling conflicts the last full week of August.

WHEREFORE, the government respectfully requests that this Court grant the motion for a sixty (60) day continuance of the above-captioned proceeding, and that the Court exclude the time within which an indictment must be filed in this matter under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, on the basis that the ends of justice served by taking such actions outweigh the best

interest of the public and the defendant in a speedy trial pursuant to the factors described in 18

U.S.C. § 3161(h)(7)(A), (B)(i), (ii), and (iv).

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
DC Bar No. 415793

By:      /s/ Brittany L. Reed
BRITTANY L. REED
Assistant United States Attorney
Bar No. 31299
650 Poydras Street, Ste. 1600
New Orleans, Louisiana 70130
Brittany.Reed2@usdoj.gov
(504) 680-3031